## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **DESIREE LYNN L.,**[1]                              ) | |
|                                                     ) | |
| **Plaintiff,**                      ) | |
|                                                     )          **CIVIL ACTION** | |
| **v.**                                             ) | |
|                                                     )          **No. 22-1202-JWL** | |
| **KILOLO KIJAKAZI,**                    ) | |
| **Acting Commissioner of Social Security,**   ) | |
|                                                     ) | |
| **Defendant.**                     ) | |
| _____ ) | |

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security denying Social Security Disability Insurance (SSDI) benefits pursuant to sections 216(i) and 223 of the Social Security Act, 42 U.S.C. §§ 416(i) and 423 (hereinafter the Act). Finding no error in the Administrative Law Judge's (ALJ) decision, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

## I.    Background

Plaintiff protectively filed an application for SSDI benefits on December 13, 2016. (R. 196, 1879).  On April 2, 2020, Plaintiff appealed a prior decision of the Social

---

[1] The court makes all its "Memorandum and Order[s]" available online.  Therefore, in the interest of protecting the privacy interests of Social Security disability claimants, it has determined to caption such opinions using only the initial of the Plaintiff's last name.

Security Administration (SSA) based on this application to the district court.  (R. 1940-

42).  In that case, the Commissioner filed an unopposed motion to remand which the

court granted on November 18, 2020.  Id. 1946.  The Appeals Council thereafter vacated

the earlier decision and remanded to an ALJ to do two things:

> Give further consideration to the claimant's maximum residual functional
> capacity during the entire period at issue and provide rationale with specific
> references to evidence of record in support of assessed limitations (Social
> Security Ruling 96-8p).  In so doing, evaluate the opinion of treating
> psychiatrist, Douglas Sheafor,[2] M.D., and other source, Sheri Daubet,[3]
> LCSW, pursuant to the provisions of 20 CFR 404.1527, and explain the
> weight given to such opinion evidence.
>
> If warranted by the expanded record, obtain evidence from a vocational
> expert to clarify the effect of the assessed limitations on the claimant's
> occupational base (Social Security Ruling 83-14).  The hypothetical
> questions should reflect the specific capacity/limitations established by the
> record as a whole.  The ALJ will ask the vocational expert to identify
> examples of appropriate jobs and to state the incidence of such jobs in the
> national economy (20 CFR 404.1566).  Further, before relying on the
> vocational expert evidence the ALJ will identify and resolve any conflicts
> between the occupational evidence provided by the vocational expert and
> information in the Dictionary of Occupational Titles (DOT) and its
> companion publication, the Selected Characteristics of Occupations (Social
> Security Ruling 00-4p).

Id. 1951.

On remand, the ALJ received more evidence and held another hearing.  (R. 1888-

2639).  The ALJ issued another decision finding Plaintiff not disabled for the closed

period between June 30, 2016 and January 30, 2019.  Id. 1865-79.  Thereafter, Plaintiff

---

[2] The record reveals the Appeals Council misspelled Dr. Sheafer's name apparently based
upon his hand-printed name in which the last "e" can be read as an "o."  (R. 1599).
[3] Both the Appeals Council and the ALJ address Ms. Daudet as Ms. Daubet, but the
record reveals her last name is Daudet.  (R. 23-24).

filed this case seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g). Plaintiff claims the ALJ failed to evaluate properly Dr. Sheafer's treating source medical opinion. (Pl. Br. 7).

The court's review is guided by the Act. Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). "Substantial evidence" refers to the weight, not the amount, of the evidence. It requires more than a scintilla, but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988). Consequently, to overturn an agency's finding of fact the court "must find that the evidence not only supports [a contrary] conclusion, but compels it." I.N.S. v. Elias-Zacarias, 502 U.S. 478, 481, n.1 (1992) (emphases in original).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005); see also, Bowling v. Shalala, 36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record,

3

nor try the issues <u>de novo</u>, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.") (quoting <u>Harrell v. Bowen</u>, 862 F.2d 471, 475 (5th Cir. 1988) (brackets in <u>Bowling</u>)).  Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. <u>Gossett</u>, 862 F.2d at 804-05; <u>Ray v. Bowen</u>, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability.  20 C.F.R. § 404.1520; <u>Wilson v. Astrue</u>, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing <u>Williams v. Bowen</u>, 844 F.2d 748, 750 (10th Cir. 1988)).  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."  <u>Wilson</u>, 602 F.3d at 1139 (quoting <u>Lax</u>, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment(s), and whether the severity of her impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  <u>Williams</u>, 844 F.2d at 750-51.  After evaluating step three, the Commissioner assesses claimant's residual functional capacity (RFC).  20 C.F.R. § 404.1520(e).  This assessment is used at both step four and step five of the sequential evaluation process.  <u>Id.</u>

The Commissioner next evaluates steps four and five of the process—determining at step four whether, considering the RFC assessed, claimant can perform her past

relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, she is able to perform other work in the economy. Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work. Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC previously assessed. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999). The court addresses the error alleged in Plaintiff's Social Security Brief.

## II.    Discussion

Plaintiff acknowledges the ALJ considered Dr. Sheafer's treating source opinion but claims "he failed to provide 'good reasons' for affording the opinion 'little weight.'" (Pl. Br. 7) (citing 20 C.F.R. § 404.1527(d)(2)).[4]  Plaintiff points out that on remand from the earlier district court decision the Appeals Council explained that in the prior decision the ALJ "did not adequately address the opinion of treating psychiatrist," Dr. Sheafer and argues that he once again has failed properly to evaluate Dr. Sheafer's opinion. Id. at 8 (quoting R. 1950).

---

[4] "Good reasons" appears to be a quote, albeit miscited, from 20 C.F.R. § 404.1527(c)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's medical opinion.")  "Little weight" appears to be a quotation, without attribution, of the ALJ's weighing of Dr. Sheafer's opinion.  (R. 1875, 1876).

Plaintiff argues contrary to the ALJ's finding the opinion was not supported by the medical evidence, that "Dr. Sheafer's opinion draws substantial support from the record," because it is consistent with the opinions of Plaintiff's Licensed Specialist Clinical Social Worker (LSCSW), Ms. Daudet, and the consultant psychiatrist, Dr. Mintz. (Pl. Br. 9-10). She argues the ALJ's finding that objective clinical findings do not support the mental health providers' opinions misrepresented the evidence which showed an "anxious, depressed and labile" mood, "anxiety and panic disorder symptoms," that she "appear[ed] psychologically frail and vulnerable," and "crie[d] during most of [Dr. Mintz's] examination." Id. at 10-11 (quoting R. 969-70). She argues, "The ALJ's absolute statement that 'exams throughout the record do not document any serious deficits' is overwhelmed by the evidence within the record." Id. 11 (quoting without citation R. 1875) (emphasis added in Plaintiff's Brief).

Plaintiff quotes the Appeals Council's notation that in the first decision the ALJ discounted Dr. Sheafer's and Ms. Daudet's opinions, "in part, because most psychiatric findings were normal," but that the records the ALJ cited related to physical impairments although Dr. Sheafer and Ms. Daudet "recorded that the claimant was depressed, anxious, and experienced manic episodes (Exhibit 7F, page 2-6; Exhibit 30F, page 2-3, 7-10, and 12-19. For the foregoing reasons further consideration of this opinion evidence, and the residual functional capacity, is warranted." Id. 11 -12 (quoting R. 1950). Plaintiff argues that despite this "explicit instruction by the Appeals Council to recognize the abnormalities noted in mental health treatment notes," the ALJ failed to do so and "again relied upon mental status examinations recorded during presentations for physical

impairments to discount the well-supported opinions of [Plaintiff's] treating and examining mental health professionals." Id. 12 (citing Allison M. v. Saul, No. 2:19-CV-2517-JAR, 2020 WL 2101281, at *6 (D. Kan. May 1, 2020) (error where the ALJ relied upon normal examination findings from medical visits not related to the impairment at issue).

Plaintiff argues the ALJ erred in discounting the medical opinions because the record only demonstrates conservative mental health treatment and the ALJ found "the record 'does not document recurrent episodes or exacerbations requiring inpatient psychiatric treatment or acute physician intervention that might provide support [to] an extreme limitation in her ability to complete a normal workday or workweek without interruption for psychologically based symptoms.'" (Pl. Br. 12) (quoting R. 1876). She argues this is error because the record reveals inpatient psychiatric treatment for nine days prior to the relevant period here. Id. at 12-13 (citing R. 346 (showing admission 10/29/2013, discharge 11/6/2013)). She argues Dr. Mintz explained Plaintiff used "a variety of mental health treatment approaches including electroshock convulsive therapy (ECT), but her underlying mental conditions appear to remain." Id. 13 (quoting R. 970). She argues the ALJ's finding the record does not support an extreme limitation in the ability to complete a workday or workweek due to psychologically based symptoms is inconsistent with the evidence she "exhibited anxiety and panic disorder symptoms, and presented to her psychiatric consultative exam while crying for nearly the entire duration." Id. 14 (citing R. 969-70).

Plaintiff argues the ALJ discounted Dr. Sheafer's opinion because he relied on her subjective complaints, but that conclusion "impermissibly rested on his speculative, unsupported assumption." Id. (citing Victory v. Barnhart, 121 F. App'x 819, 823 (10th Cir. 2005) (finding an ALJ erred by speculating that a doctor's opinion was based upon the claimant's own subjective reports of her symptoms, where the record did not support that conclusion)). Finally, Plaintiff notes, "the ALJ rejected Dr. Sheafer's treating opinion, in part, because it was presented in a 'checkbox format without narrative discussion of the basis for each limitation.'" (Pl. Br. 15) (quoting R. 1876). She argues "the Tenth Circuit has explained that an ALJ should not reject a medical opinion merely [because] the doctor's clinical assessments are provided on a form without a supporting narrative," but that "ALJs should consider whether 'there were other materials [in the record] that could lend support to the conclusions in the forms.'" Id. (quoting Andersen v. Astrue, 319 F. App'x 712, 724 (10th Cir. 2009)). She continues,

> Here, as already discussed above, there was significant supporting mental health evidence that was supportive of Dr. Sheafer's medical opinion, including the consistent medical opinions of two other mental health professionals, a treatment history that included consistent therapy, medication, inpatient psychiatric hospitalization, and electroshock convulsive therapy, and clinical examinations that reflected ongoing abnormalities. The ALJ was required to consider this other evidence in evaluating whether Dr. Sheafer's opinion was supported, notwithstanding the format in which his opinion was presented.

Id. (citing Andersen, 319 F. App'x at 724).

Plaintiff argues the ALJ should have accorded Dr. Sheafer's opinion controlling weight or at least deference. Id. 15-16. She argues the decision below should be remanded for an immediate award of benefits because her application has been pending

8

for six and a half years, remand for further fact finding would serve no useful purpose, and this is the second time the SSA has erroneously decided this application.  Id. 16.

The Commissioner argues substantial evidence supports the ALJ's RFC finding and his evaluation of the medical source opinion evidence.  (Comm'r Br. 4).  The Commissioner points out an ALJ is required to weigh each medical source opinion in accordance with certain regulatory factors.  Id. at 5 (citing 20 C.F.R. § 404.1527).  She argues the primary considerations for the ALJ are the factors of supportability and consistency because a treating source opinion "cannot be given 'controlling weight' unless it meets both the supportability and consistency requirements."  Id. (citing 20 C.F.R. § 404.1527(c)(2)).

The Commissioner argues the ALJ properly weighed the medical opinions, recognizing Dr. Sheafer is a treating provider and discussing his opinion at length.  Id. 7. She argues he properly declined to afford Dr. Sheafer's opinion controlling weight because it "was unsupported by the medical evidence of record, including his own treatment notes," and was "inconsistent with his contemporaneous treatment notes, which indicated that Plaintiff's symptoms were 'much improved' and that she showed 'a good response to Abilify.'"  Id. 8 (quoting R. 1876).

She also points out that the ALJ discounted Dr. Sheafer's opinion because Dr. Sheafer's treatment notes "did not document any objective clinical signs or findings, but "merely the claimant's subjective complaints regarding her symptoms," and he "did not provide 'any explanations or references to medical signs or findings of record to support his conclusions'" but presented his opinion "in a checkbox format without narrative

discussion of the basis for each limitation." Id. (quoting R. 1876).  She argues the ALJ

provided reasons based in the record evidence to discount the opinions of Dr. Mintz and

Ms. Daudet.  (Comm'r Br. 8-10).

 The Commissioner argues that in discounting Dr. Sheafer's opinion because of his

use of a checkbox format the ALJ also looked at other material that could lend support to

the opinion and found support lacking in Dr. Sheafer's treating notes.  Id. 11.  She argues

Plaintiff ignores the opinions of the state agency psychological consultants, Dr. Duclos

and Dr. Leaf, which are supportive of the ALJ's RFC assessment.  Id. 12.  She notes the

consultants reviewed all the medical evidence available to them, including the

examination findings of Dr. Mintz and the treatment notes of Dr. Sheafer and Ms.

Daudet.  Id.  She notes the ALJ found their opinions supported by and consistent with the

record evidence and "provided 'detailed narratives summarizing what evidence they

relied upon when reaching their conclusions.'"  Id. at 12-13 (quoting R. 1875).

 The Commissioner argues the ALJ properly characterized the record evidence.  Id.

13.  She argues the ALJ "repeatedly acknowledged" the same abnormalities relied upon

by Plaintiff in her arguments in the ALJ's step two and three analyses, in his summary of

the mental health records, and in his evaluation of the opinion evidence.  Id.  She points

out the ALJ found examinations documenting these abnormalities "did not document

'any serious deficits in attention, concentration, or memory.'"   Id. 14 (quoting R. 1875,

and noting Plaintiff's quotation of this sentence did not include the phrase underlined)

(emphasis in the Commissioner's Brief)).  The Commissioner cites evidence

demonstrating "that while Plaintiff often presented with depressed or anxious moods

during the relevant period, she also demonstrated largely normal attention, concentration, and cognitive functioning," at times had a "completely normal (euthymic)" mood, and "consistently exhibited appropriate and interactive behavior, even when depressed, anxious, and/or with an "impaired" functional status."  (Comm'r Br. 14).  She argues Plaintiff has not shown that the abnormalities present are not accounted for by the mental RFC assessed.  Id.

The Commissioner argues that the ALJ's reliance on conservative treatment is proper in the circumstances of this case in that Plaintiff's hospitalization for psychiatric treatment and ECT occurred in November 2013 well before the alleged onset of disability on June 30, 2016 and Plaintiff has had no ECT or psychiatric hospitalization during the period relevant here.  Id. 15.

The Commissioner argues the ALJ fully complied with the Appeals Council's remand order.  Id.  She argues it was appropriate for the ALJ to consider mental status findings in treatment notes related to physical impairments because, as the ALJ explained,

> While the claimant may have been seeking treatment for physical issues during those visits, one would expect her to exhibit some signs of emotional distress, lability, or cognitive dysfunction during at least some of these exams, if she were truly as limited as Ms. Daubet [sic] suggests.

Id. at 16 (quoting R. 1876) (bold omitted).  She notes that at a consultative physical examination the physician "documented [Plaintiff's] complaints of depression, anxiety, and difficulty concentrating, but still noted completely normal mental status findings." Id. (citing R. 1591-92).

In her Reply Brief, Plaintiff notes that the Commissioner's Brief cited "four pages of Dr. Sheafer's treatment notes as evidence that the ALJ adequately considered [his] checkbox opinion within the context of the entire record" and argues, "Citing to four pages of treatment notes and generally concluding that 'Dr. Sheafer's opinions are neither well supported nor consistent with the other evidence of record' did not satisfy the ALJ's obligation to provide 'good reasons' for rejecting Dr. Sheafer's opinion."  (Reply 3) (apparently quoting without citation to the Commissioner's brief).  Plaintiff recognized the Commissioner's assertion that the ALJ repeatedly acknowledged abnormalities contained in the record but argues,

> just because the ALJ acknowledged evidence earlier in his decision, that did not free him to generally mischaracterize the evidence later in his decision. At best, the ALJ's acknowledgement of abnormalities early in the decision and his denial of their existence later in the decision created an unresolved inconsistency within the ALJ's decision.

Id. 4.

Plaintiff responds that in accusing Plaintiff of omitting context in attacking the ALJ's decision, the Commissioner omitted further context by failing to include the ALJ's assertion "the majority of the claimant's examiners have not noted any significant abnormalities in the claimant's behavior or social function."  Id. 5 (quoting R. 1875). She argues, "The ALJ did not cite to any evidence in support of [t]his assertion" and "the ALJ's unsupported conclusion was overwhelmed by evidence within the record which did show significant abnormalities."  Id. (citing R. 969-70, Dr. Mintz's finding Plaintiff "exhibit[ed] anxiety and panic disorder symptoms," she "appear[ed] psychologically frail and vulnerable," and she "crie[d] during most of the examination;" and citing Dr.

Sheafer's and Ms. Daudet's treatment records suggesting Plaintiff "frequently presented as anxious, depressed tired, dysthymic, stressed, fatigued, anhedonic, tearful, distressed, and with flat affect and unstable mood.").

Plaintiff rejects the Commissioner's argument it was appropriate for the ALJ to rely on examinations by healthcare providers dealing with physical impairments as the ALJ explained.  She argues, "providing a more detailed rationale did not permit the ALJ to merely disagree with the Appeal's Council's judgment."   (Reply 6) (citing Noreja v. Comm'r, SSA, 952 F.3d 1172, 1179 (10th Cir. 2020) ("An ALJ 'shall take any action that is ordered by the Appeals Council.'").

Plaintiff argues "ALJ's discussion of other evidence cannot remedy his failure to follow the regulations in evaluating Dr. Sheafer's opinion.  The ALJ's failure to properly evaluate Dr. Sheafer's opinion requires remand, notwithstanding the ALJ's assessment of the remainder of the evidence within the record."  Id. 8-7 (citations omitted).

## A.    Legal Standard for Evaluating Medical Opinions

Because the application in this case was originally filed in December 2016, the court must apply the standard promulgated in 20 C.F.R. § 404.1527, Evaluating opinion evidence for claims filed before March 27, 2017.

"Medical opinions" are defined as "statements from acceptable medical sources that reflect judgments about the nature and severity of [claimant's] impairment(s), including [claimant's] symptoms, diagnosis and prognosis, what [claimant] can still do despite impairment(s), and [claimant's] physical or mental restrictions."  20 C.F.R. § 404.1527(a)(1).  The regulations include licensed physicians, licensed or certified

psychologists, licensed optometrists, licensed podiatrists, qualified speech-language

pathologists, and licensed audiologists within the meaning of "acceptable medical

sources." Id., § 404.1502(a).  The regulations provide that the Commissioner will also

consider opinions of medical sources who are not acceptable medical sources and of

other nonmedical sources.  Id. § 404.1527(f).

Opinions from any source will be evaluated by the Commissioner in accordance

with certain factors contained in the regulations.  20 C.F.R. § 404.1527(c, f); Soc. Sec.

Ruling 96-5p, West's Soc. Sec. Reporting Serv., Rulings 123-24 (Supp. 2023).   Medical

source opinions on issues reserved to the Commissioner will be reviewed and considered

by the ALJ, will not be determinative of the issue, and will not be given any special

significance.  20 C.F.R. § 404.1527(d).

> A treating physician's opinion must be given substantial weight unless
> good cause is shown to disregard it.  Frey v. Bowen, 816 F.2d 508, 513
> (10th Cir. 1987).  When a treating physician's opinion is inconsistent with
> other medical evidence, the ALJ's task is to examine the other physicians'
> reports "to see if [they] 'outweigh[]' the treating physician's report, not the
> other way around."  Reyes v. Bowen, 845 F.2d 242, 245 (10th Cir. 1988).
> The ALJ must give specific, legitimate reasons for disregarding the treating
> physician's opinion that a claimant is disabled.  Frey, 816 F.2d at 513.

Goatcher v. Dep't of Health & Human Serv., 52 F.3d 288, 289-90 (10th Cir. 1995).  "If

[the Commissioner] find[s] that a treating source's opinion on the issue(s) of the nature

and severity of [the claimant's] impairment(s) [(1)] is well-supported by medically

acceptable clinical and laboratory diagnostic techniques and [(2)] is not inconsistent with

the other substantial evidence in [claimant's] case record, [the Commissioner] will give it

controlling weight."  20 C.F.R. § 404.1527(c)(2) (emphasis added).

When the Commissioner does not give controlling weight to a treating physician's opinion on the nature and severity of the claimant's impairment(s), she will consider certain factors used for determining the weight given all medical opinions.  Id. § 404.1527(c)(2)(i, ii) & (c)(3-6).  Those factors are: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.  Id. at § 404.1527(c)(2-6); see also Goatcher, 52 F.3d at 290.

The Tenth Circuit has explained the nature of the inquiry regarding a treating source's medical opinion.  Watkins v. Barnhart, 350 F.3d 1297, 1300-01 (10th Cir. 2003) (citing SSR 96-2p).  The ALJ first determines "whether the opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques.'"  Id. at 1300 (quoting SSR 96-2p).  If the opinion is well-supported, the ALJ must confirm that the opinion is also not inconsistent with other substantial evidence in the record.  Id.  "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight."  Id.

If the treating source opinion is not given controlling weight, the inquiry does not end.  Id.  A treating source opinion is "still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527."  Id. ; see also Drapeau v.

Massanari, 255 F.3d 1211, 1213 (10th Cir. 2001) (citing Goatcher v., 52 F.3d at 290).

After considering the factors, the ALJ must give reasons in the decision for the weight he

gives the treating source opinion. Id. 350 F.3d at 1301. "Finally, if the ALJ rejects the

opinion completely, he must then give 'specific, legitimate reasons' for doing so." Id.

(citing Miller v. Chater, 99 F.3d 972, 976 (10th Cir. 1996) (quoting Frey v. Bowen, 816

F.2d 508, 513 (10th Cir. 1987)).

### B.      The ALJ's Relevant Findings

Plaintiff does not allege error in the ALJ's evaluation of her physical RFC or of

the opinion evidence regarding her physical abilities and limitations, therefore the court

will not address those areas.  However, it presents in significant detail the ALJ's

evaluation of the evidence and medical opinions relating to Plaintiff's mental abilities and

limitations.  The ALJ discussed Plaintiff's mental functioning in his step three analysis:

> The claimant alleged that her activities of daily living were profoundly
> limited by her physical and mental impairments.  For example, the claimant
> reported that she neglected her personal care and grooming needs due to her
> depression.  She reported being able to perform household chores for only
> ten minutes at a time.  The claimant reported being housebound at times
> due to depression, anxiety, and physical pain.  She reported her sole,
> regular recreational activity to be watching television daily (Ex. 4E, 12E,
> 13E, 17F/2, 22F/2; Claimant's Testimony).  However, the medical
> evidence, which is discussed in detail below, fails to document the presence
> of objectively discernible medical signs reasonably consistent with a
> finding that the claimant had a "marked" or "extreme" limitation in any of
> the broad areas of mental functioning that comprise the "paragraph B"
> criteria.  For instance, mental status examinations at New Beginnings,
> where the claimant receives psychiatric and individual therapy services,
> sometimes noted that the claimant had a depressed or anxious mood or a
> flat affect.  They also often indicated that her functional status was variably
> impaired, but they did not explain how or to what extent.  These exams
> frequently showed a number of normal findings as well, such as a euthymic
> mood, intact functional status, or an appropriate affect.  She was also

typically observed to be interactive (e.g., Ex. 30F; 37F/19, 21).  Moreover, clinical findings and observations from exams at other facilities consistently yielded normal findings (Ex. 9F/209, 241, 247; 12F/2; 20F/5-9; 21F/11, 18-19, 26-27; 22F/4; 27F/2-7; 29F/6, 35; 32F; 33F/38, 59, 90, 104). Meanwhile, the claimant was recommended no more significant treatment than individual therapy and the use of psychotropic medications, including Cymbalta and Abilify.  Based upon the totality of the evidence, the undersigned finds that the claimant had a moderate limitation in understanding, remembering, or applying information; a moderate limitation in interacting with others; a moderate limitation in concentrating, persisting, or maintaining pace; and a moderate limitation in adapting or managing oneself.

(R. 1870).

In discussing Plaintiff's obesity, the ALJ made certain findings relevant here:

For example, the record does not document exacerbations of the claimant's medical conditions that occurred with such frequency to conclude that she would have been absent from work with any regularity.  Similarly, the claimant did not present with objectively observed pain behavior, profound emotional distress, regular exacerbations of her impairments, fatigue, or deficits with attention or concentration that would support a finding that she requires extra work breaks or would be off-task beyond what can be accommodated by the work breaks customarily offered by competitive employment.

(R. 1873).

The ALJ summarized Plaintiff's psychological treatment and examinations:

The record also fails to support the claimant's allegations of disabling psychiatric symptoms.  The medical evidence of record does reflect a history of treatment for depression, anxiety/PTSD, and substance addiction disorder; however other than her subjective symptoms, there is little evidence to support the severity and degree of limitation the claimant asserts.  For example, the claimant received mental health treatment through New Beginnings Health Care beginning in December 2013.  Her treatment regimen included individual therapy and medication management, including the use of Cymbalta and Abilify.  However, the claimant's mental health treatment notes were primarily focused on her preoccupation with her perceived physical issues and situational family issues (e.g., Ex. 30F).  For instance, at a January 2018 follow-up visit, she

was noted to be anxious, tearful, and preoccupied with her then-16-year-old son's "suicide letter" (Ex. 30F/16). As previously discussed, mental status examinations at New Beginnings sometimes noted that the claimant had a depressed or anxious mood or a flat affect, or indicated that her functional status was variably impaired, which does provide some support for the claimant's allegations. However, they did not explain how her functional status was impaired or to what degree, while they frequently showed normal findings such as a euthymic mood, intact functional status, or an appropriate affect. The claimant was also typically observed to be interactive (e.g., Ex. 30F; 37F/19, 21). Furthermore, other examiners who saw the claimant during the relevant period consistently reported normal findings (Ex. 9F/209, 241, 247; 12F/2; 20F/5-9; 21F/11, 18-19, 26-27; 22F/4; 27F/2-7; 29F/6, 35; 32F; 33F/38, 59, 90, 104).

In addition to the treatment described above, the claimant attended a consultative psychological examination with Stanley Mintz, Ph.D., on March 30, 2017. On exam, the claimant was anxious, depressed, and labile. She was upset and cried through most of the examination, and she appeared to function in the low average intellectual ranges. However, the examination otherwise yielded objective findings within normal limitations. Although she endorsed other symptoms, including memory deficits and symptoms of panic, her immediate attention span, short and long-term memory processes, formal judgment, and reasoning all appeared intact (Ex. 17F). Thus, while the claimant may indeed have some limitations related to mental impairments, exams do not document any serious deficits in attention, concentration, or memory. Also of note, while the claimant often presented with a depressed or anxious mood, and was sometimes tearful or labile, the record does not document the claimant presenting with social deficits that would support a conclusion that she has any greater social limitations than have already been included in the residual functional capacity above. For example, she is not noted to have had difficulty waiting in public areas, to behave inappropriately with office staff, or to be unable to form a therapeutic rapport with treatment providers. Accordingly, the evidence as a whole does not reflect signs and symptoms of a severity to preclude the claimant from performing simple, routine, repetitive tasks, making simple work-related decisions, or tolerating occasional interaction with coworkers and supervisors.

(R. 1874).

The ALJ then explained his evaluation of the opinion evidence, noting that he accorded significant weight to the medical opinions of the state agency psychological consultants, Dr. Duclos and Dr Leaf, because they

> are familiar with the disability process and the Regulations, including the terms of art and legal and medical standards set forth therein. Additionally, they each have specialized training and expertise that make them eminently qualified to render their respective opinions regarding the claimant's mental … ailments. Most significantly, they based their opinions upon comprehensive reviews of the record, including the claimant's longitudinal medical history and self-reported daily activities and their opinions are consistent with the same. Furthermore, their opinions are supported by detailed narratives summarizing what evidence they relied upon when reaching their conclusions. Although additional evidence has subsequently been added to the record since, that evidence does not document an appreciable worsening in the claimant's condition. To the extent the findings herein deviate from the conclusions of the State agency consultants, this is due to the undersigned giving some limited credence to the claimant's otherwise unsubstantiated allegations.

(R. 1874-75).

> Although the undersigned has considered the opinion of consultative examiner Stanley I. Mintz, Ph.D., it is given little weight. (Exhibit 17F). Dr. Mintz's opinion was based upon a one-time examination of the claimant, the findings of which do not reasonably support his conclusions. As is noted above, the claimant presented with some abnormalities of mood and affect, and appeared to function in the low average intellectual range; however, the examination otherwise yielded normal attention, concentration, memory, judgment, and reasoning. Thus, Dr. Mintz's opinion that the claimant is limited to performing only some part-time work is not reasonably supported by his own examination findings. Dr. Mintz's explanation for his opinion is similarly unpersuasive, as he expressly indicated the limitations he assessed were based upon the claimant's self-reported symptoms and limitations (e.g., her statements regarding her restricted activities of daily living) rather than objective clinical findings. Furthermore, Dr. Mintz's opinion is not reasonably consistent with the broader case record. As is explained above, exams throughout the record do not document any serious deficits in attention, concentration, or memory, and the majority of the claimant's examiners have not noted any

significant abnormalities in the claimant's behavior or social function. Therefore, the undersigned gives Dr. Mintz's opinion little weight.

The undersigned gives little weight to the Medical Source Statement – Mental completed by Douglas Sheafer, M.D.  Dr. Sheafer opined that the claimant has marked limitations in the ability to perform activities within a schedule, maintain regular attendance, be punctual within customary tolerances, complete a normal workday and workweek without interruption from psychologically-based symptoms, and perform at a consistent pace without an unreasonable number and length of rest periods.  He also opined that she would be absent from work four days per month and be off-task 15 percent of the workday (Ex. 24F).  Although he is a treatment provider, Dr. Sheafer's opinions are not well supported by the medical evidence of record.  For example, his own treatment notes do not document any objective clinical sings [sic] or findings, but instead merely document the claimant's subjective complaints regarding her symptoms (e.g., Ex. 30F/11, 18-20).  Additionally, the undersigned notes that Dr. Sheafer did not provide any explanation or references to medical signs or findings of record to support his conclusions.  Instead, his opinions are presented in a checkbox format without narrative discussion of the basis for each limitation.  The undersigned also notes that Dr. Sheafer's last two notes before he completed the medical source statement indicate that the claimant's symptoms were much improved and she had had a good response to Abilify (Ex. 30F/11).  Therefore, because Dr. Sheafer's opinions are neither well supported nor consistent with the other evidence of record, the undersigned gives them little weight.

The undersigned similarly gives little weight to the Medical Source Statements – Mental completed by Sheri Daubet [sic], LSCSW.  Therein, Ms. Daubet assessed the claimant to have a variety of marked ("seriously interferes with the ability to function independently ... 60% overall reduction in performance") and extreme ("preclude useful functioning") limitations, including a marked limitation in understanding, remembering, and carrying out very short and simple instructions, and extreme limitations in all or substantially all activities requiring sustained concentration and persistence.  She also opined that the claimant would be off-task 25 percent or more of the workday and would be absent from work two or more days per week.  (Ex. 23F; 28F).  Although she is a treatment provider, Ms. Daubet is not an acceptable medical source (20 CFR 404.1527(f)).  More significantly, her opinions are not reasonably supported by the treatment notes from her facility, New Beginning Health Care.  As is noted above, examinations yielded mild to moderate abnormalities, such as a depressed and/or anxious mood with a tearful or flat affect.  However, they do not

document any serious deficits in attention, concentration, or memory, or include specific details regarding the mental status tasks administered to determine that the claimant's functioning was "variably impaired." Moreover, Ms. Daubet's opinion that the claimant has marked or extreme limitations in almost all areas is inconsistent with the claimant's conservative treatment. For instance, the record does not document recurrent episodes or exacerbations requiring inpatient psychiatric treatment or acute physician intervention that might provide support [sic] an extreme limitation in her ability to complete a normal workday or workweek without interruption from psychologically based symptoms. Furthermore, as noted above, other examiners who saw the claimant during the relevant period consistently reported normal findings (Ex. 9F/209, 241, 247; 12F/2; 20F/5-9; 21F/11, 18-19, 26-27; 22F/4; 27F/2-7; 29F/6, 35; 32F; 33F/38, 59, 90, 104). While the claimant may have been seeking treatment for physical issues during these visits, one would expect her to exhibit some signs of emotional distress, lability, or cognitive dysfunction during at least some of these exams, if she were truly as limited as Ms. Daubet suggests. Therefore, after a careful review of the evidence, the undersigned gives Ms. Daubet's Medical Source Statements little weight.

The undersigned gives little weight to the various Global Assessment of Functioning ("GAF") scores that have been assigned to the claimant during the relevant period, which have ranged from 47 to 50 (Ex. 1F/37, 39, 54, 59, 61). GAF scores are a clinical and diagnostic tool, used by clinicians to gauge the patient's progress in the therapeutic process. GAF scores are not, per se, medical opinions and there is no correlation between a GAF score and the claimant's ability to do the mental demands of basic work related activities. Thus, the undersigned gives the GAF scores little weight as opinion evidence. Nevertheless, they have been fully considered together with all other medical signs, diagnostic impressions, and treatment recommendations when assessing the consistency of the claimant's allegations regarding the intensity, persistence, and limiting effects of her impairments.

(R. 1875-77).

## C.   Analysis

### 1.   *Appeals Council Remand Order*

The court first addresses Plaintiff's claim the ALJ failed to follow the "explicit

instruction" of the Appeals Council "to recognize the abnormalities noted in mental

health treatment notes" and once again erroneously "relied upon mental status examinations recorded during presentations for physical impairments to discount the well-supported opinions of [Claimant's] treating and examining mental health professionals." (Pl. Br. 12). The court finds no error.

As Plaintiff recognized in her brief, the Appeals Council issued an order on remand from the prior district court's decision remanding this case to the ALJ. (R. 1950-51). In that order, the Council remanded to the ALJ for resolution of certain identified issues. Id. 1950. The issues were inadequate consideration and evaluation of the opinions of treating source psychiatrist, Dr. Sheafer, and of other source, Ms. Daudet, and the fact "the ALJ assigned little weight to both opinions, in part, because most psychiatric findings were normal." Id. As Plaintiff quoted in her brief, the Appeals Council explained: "the [psychiatric] findings cited by the ALJ were made during the claimant's treatment for physical issues (Decision, pages 13-14). In contrast, Dr. Sheafor [sic] and Ms. Daubet [sic] recorded that the claimant was depressed, anxious, and experienced manic episodes." (Pl. Br. 11) (quoting R. 1950). The Council concluded that because of the issues identified, "further consideration of this opinion evidence, and the residual functional capacity, is warranted." (R. 1950). With regard to the opinions of Dr. Sheafer and Ms. Daudet, the Appeals Council ordered,

> Upon remand the ALJ will:
>
> Give further consideration to the claimant's maximum residual functional capacity during the entire period at issue and provide rationale with specific references to evidence of record in support of assessed limitations (Social Security Ruling 96-8p). In so doing, evaluate the opinion of treating psychiatrist, Douglas Sheafor, M.D. [sic], and other source, Sheri Daubet

22

[sic], LCSW [sic], pursuant to the provisions of 20 CFR 404.1527, and explain the weight given to such opinion evidence.

(R. 1951).

In his decision on remand the ALJ clearly recognized Dr. Sheafer was Plaintiff's treating psychiatrist, recognized the opinions provided by Dr. Sheafer and Ms. Daudet, considered each opinion, and explained the weight he had accorded each opinion. The ALJ did precisely what he was ordered to do respecting the opinions at issue. He considered them and explained the weight accorded each of them. The Appeals Council merely noted what Dr. Sheafer and Ms. Daudet recorded in their treatment notes when explaining why there was an issue to which the ALJ must give further consideration. It ordered the ALJ to give further consideration and explain his consideration, it did not order the ALJ to adopt the findings of Dr. Sheafer or Ms. Daudet as his own. To the extent Plaintiff argues the ALJ once again erred by considering mental status exam findings made by physicians evaluating her physical complaints to discount the medical opinions of mental healthcare providers, the court notes that neither the prior district court opinion nor the Appeals Council's remand order held that was error, and the court will further address the issue later in this opinion.

### 2.  Evaluation of the Medical Opinions of Mental Abilities and Limitations

As Plaintiff's Brief implies, in weighing opinion evidence the first question is whether there is a treating source opinion and if so whether that opinion is worthy of controlling weight. 20 C.F.R. § 404.1527. The only mental healthcare treating source here is Dr. Sheafer. While Ms. Daudet provided mental health treatment to Plaintiff, she

is a social worker and as such is not an "acceptable medical source" qualified as a "treating source" within the meaning of the regulations.  Id.  However, she is a medical source who is not an acceptable medical source (an other medical source), her opinion will be considered using the factors in 20 C.F.R. § 404.1527(c), and the ALJ must explain the weight given her opinion.  Id. 404.1527(f).

Dr. Sheafer's opinion is worthy of controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record."  Id. (c)(2).  The ALJ found Dr. Sheafer did "not document any objective clinical si[gn]s or findings" and his opinions are not "consistent with the other evidence of record."  (R. 1876).  Plaintiff's argument that "Dr. Sheafer's opinion draws substantial support from the record" misses the point of controlling weight—that the opinion must be "well-supported by medically acceptable clinical and laboratory diagnostic techniques."  Her argument that it is supported by Dr. Mintz's clinical findings of an "anxious, depressed and labile" mood, "anxiety and panic disorder symptoms," and that she "appear[ed] psychologically frail and vulnerable," and "crie[d] during most of the examination" does not point to clinical signs or findings in Dr. Sheafer's treatment notes and also fails for other reasons.  First, while the mere presence of an anxious, depressed, and labile mood, or of anxiety and panic disorder symptoms are supportive of some limitations in mental abilities, neither Dr. Sheafer, Dr. Mintz, nor Plaintiff explain how they compel the disabling limitations opined by Dr. Sheafer (as to require controlling weight) or even those opined by Dr. Mintz.  Next, the fact that at Dr. Mintz's examination Plaintiff appeared psychologically frail and vulnerable and cried

most of the time deals more with her presentation than with clinical signs and findings—this is especially true when one considers—as the ALJ found and the record supports—that "one would expect her to exhibit some signs of emotional distress, lability, or cognitive dysfunction during at least some of" the mental examinations when she presented for treatment of physical impairments if her mental limitations were of disabling severity.  (R. 1876).

In response to the ALJ's finding that Dr. Sheafer's opinion is not consistent with other record evidence, Plaintiff argues he did not cite evidence with which Dr. Sheafer's opinion is inconsistent and she appeals to record evidence with which it is consistent. Again, this argument misses the requirements for affording a treating source opinion controlling weight—that the treating source "is <u>not inconsistent</u> with the other substantial evidence in [the] case record."  20 C.F.R. § 404.1527(c)(2) (underline added).  In other words, a treating source opinion is <u>unworthy</u> of controlling weight if it is <u>inconsistent</u> with other substantial evidence in the case record.

Dr. Duclos provided the initial review mental RFC assessment.  (R. 86-88).  She opined Plaintiff "can understand and remember 1-2 step instructions" and "is able to carry out 1-2 step instructions in a low stress work environment."  <u>Id.</u> 87.  She found Plaintiff "is able to interact on [an] occasional basis w/the general public and coworkers" and "can adapt to minor workplace changes."  <u>Id.</u> 88.  Dr. Leaf provided his opinion of Plaintiff's mental RFC at the reconsideration review.  <u>Id.</u> 109-11.  His explanation of Plaintiff's limitation in individual abilities was quite similar to Dr. Duclos's.  (R. 109-11).  For his additional MRFC assessment he found Plaintiff "can understand, remember,

and carry out simple instructions, make simple decisions, attend and concentrate for extended periods, interact adequately with coworkers and supervisors with low demands and respond appropriately to simple changes in routine work settings." Id. at 111. The ALJ specifically cited and addressed the opinions of these state agency psychological consultants and accorded them significant weight. Id. at 1874-75.

The opinions of the state agency psychological consultants are such relevant evidence as a reasonable mind might accept as adequate to support a conclusion (substantial evidence) and are clearly inconsistent with Dr. Sheafer's treating source opinion. As such, Dr. Sheafer's opinion fails both prongs of the requirement to be accorded controlling weight. Plaintiff does not even address the opinions of these state agency consultants until her Reply Brief wherein she argues the discussion of these opinions "cannot remedy [the ALJ's] failure to follow the regulations in evaluating Dr. Sheafer's opinion." (Reply 6). However, as noted herein, discussion of the opinions was necessary to determine whether the ALJ followed the regulations in evaluating Dr. Sheafer's opinion.

Having determined the ALJ did not err in deciding not to accord controlling weight to Dr. Sheafer's opinion the court must determine whether he properly weighed the opinion using the regulatory factors. The ALJ provided several reasons he accorded only little weight to Dr. Sheafer's opinion. He found the opinion not well supported by the medical evidence because "his own treatment notes do not document any objective clinical sings [sic] or findings, but instead merely document the claimant's subjective complaints regarding her symptoms." (R. 1876) (citing e.g., Ex.30F/11, 18-20, R. 1678,

26

1685-87).  The ALJ found that in his Medical Source Statement "Dr. Sheafer did not provide any explanation or references to medical signs or findings of record to support his conclusions."  Id.  Finally, the ALJ found "that Dr. Sheafer's last two notes before he completed the medical source statement indicate that the claimant's symptoms were much improved and she had had a good response to Abilify.  Id. (citing Ex. 30F/11, R. 1678).

The court's review of the record evidence, particularly the evidence cited by the ALJ in his decision reveals that the evidence supports the ALJ's rationale.  Plaintiff's argument that the ALJ's discounting Dr. Shaefer's opinion because he relied on her subjective complaints "impermissibly rested on his speculative, unsupported assumption" is without merit.  As Plaintiff's brief suggests, an ALJ may not make speculative inferences from medical reports that a medical opinion is based on a claimant's subjective complaints.  McGoffin v. Barnhart, 288 F.3d 1248, 1252 (10th Cir. 2002).  As the Tenth Circuit has recognized, "The practice of psychology is necessarily dependent, at least in part, on a patient's subjective statements."  Thomas v. Barnhart, 147 F. App'x 755, 759 (10th Cir. 2005).  A psychological opinion's findings may rest on observed clinical signs and symptoms or on psychological tests.  Id.  Where the ALJ has no legal or evidentiary basis for finding that a treating physician's opinion is based only on plaintiff's subjective complaints, his conclusion to that effect is merely speculation which falls within the prohibition of McGoffin.  Langley v. Barnhart, 373 F.3d 1116, 1121 (10th Cir. 2004).  Such a conclusion must be based upon evidence taken from the administrative record.  Victory, 121 F. App'x at 823-24.  Here, however, the record

reveals the ALJ based his conclusion upon evidence taken from the administrative record. As quoted above, the ALJ found Dr. Sheafer's notes don't document objective clinical signs or findings, but merely document the Plaintiff's subjective complaints.  A fair reading of all the psychiatrist's notes supports that conclusion.  For example, the records cited by the ALJ appear to contain only Plaintiff's reports/complaints.  (R. 1678) ("Good response to Abilify.  Just had successful injection in lumbar spine by (illegible).  More active, getting out more.  Feels optimistic."  "Much improved.  Starting to clean her house and get (illegible) to help.  Feels strong enough to try quitting smoking.  Feels much more optimistic."); (R. 1685) ("Depressed – worried & guilty about son who appears to be bipolar.  [Symptoms] are apathy, anger(?), [decreased] motivation, lack of self-care."); (R. 1686) ("Fairly stable.  Stress mainly comes [secondary] to alcoholic husband who is a nasty drunk in denial.  She stays to protect children – last one is Jr. in HS.  Feels meds are adequate."); (R. 1687) ("Has been physically ill [secondary] to stress.  Daughter living [with] her has problems (illegible …) sees the value of not taking on daughter's distress.  Kidney function improved - stage I.").  Plaintiff argues that the ALJ's reliance on these four pages of Dr. Sheafer's treatment notes is inadequate to provide good reasons to discount the psychiatrist's opinion.  (Reply 3).  However, the ALJ cited these four pages as exemplary of the physician's failure to document clinical signs or findings and reliance on Plaintiff's subjective reports of symptoms, and the courts review of the treatment notes supports the ALJ's finding.

Plaintiff makes other arguments of error not addressing the rationale the ALJ expressed for discounting Dr. Sheafer's medical opinion.  First, she argues, "The ALJ's

absolute statement that "'exams throughout the record do not document <u>any</u> serious

deficits' is overwhelmed by the evidence within the record." (Pl. Br. 11) (emphasis in

Plaintiff's Brief) (quoting without attribution R. 1875). The Commissioner responded

that Plaintiff had not quoted the entirety of the ALJ's statement (Comm'r Br. 14), and in

her Reply Brief Plaintiff responded, "Defendant failed to acknowledge the remainder of

the ALJ's statement, regarding the apparent majority of treatment providers that did not

observe abnormalities regarding 'claimant's behavior or social function.'" (Reply 5).

The ALJ's findings at issue were made in regard to giving Dr. Mintz's opinion

little weight. (R. 1875). Dr. Mintz provided his "Summary and Recommendations:"

> [Plaintiff] exhibits severe and persistent mental illness symptoms. She
> appears psychologically frail and vulnerable. She cries during most of the
> examination. She appears visibly upset during much of the examination.
> In my opinion she does not appear capable of doing full-time sustained
> work from a psychological point of view alone without regard to her
> medical conditions. She may be able to do some part-time work. She is in
> mental health treatment and has utilized a variety of mental health treatment
> approaches including electroshock convulsive therapy, but her underlying
> mental health conditions appear to remain. She feels she is getting worse.
> She appears able to understand simple and intermediate instructions. She
> appears capable of doing perhaps only very simple job tasks at this time
> perhaps on a part-time basis. Her anxiety is quite severe at this time. She
> has difficulty doing basic activities of daily living. She would have
> difficulty in my opinion relating well to co-workers, supervisors and-the
> public due to these mental illness symptoms. She does not appear capable
> of handling her own funds due to her history of alcohol abuse.

(R. 970). The ALJ explained his bases for discounting Dr. Mintz's opinion:

> Dr. Mintz's opinion that the claimant is limited to performing only some
> part-time work is not reasonably supported by his own examination
> findings. Dr. Mintz's explanation for his opinion is similarly unpersuasive,
> as he expressly indicated the limitations he assessed were based upon the
> claimant's self-reported symptoms and limitations (e.g., her statements
> regarding her restricted activities of daily living) rather than objective

> clinical findings.  Furthermore, Dr. Mintz's opinion is not reasonably
> consistent with the broader case record.  As is explained above, exams
> throughout the record do not document any serious deficits in attention,
> concentration, or memory, and the majority of the claimant's examiners
> have not noted any significant abnormalities in the claimant's behavior or
> social function.  Therefore, the undersigned gives Dr. Mintz's opinion little
> weight.

Id. 1875.  In context, the ALJ's explanation can be seen as holding that Dr. Mintz's

opinion is not supported by his own examination because Dr. Mintz found Plaintiff has

the attention, memory, and concentration for simple and intermediate instructions and for

very simple job tasks.  He supported his understanding by noting that most mental status

examinations throughout the record do not document "serious deficits in attention,

concentration, or memory."  He went on to note that contra to Dr. Mintz's reliance on

Plaintiff's appearing psychologically frail and vulnerable, crying, and appearing visibly

upset during the examination, "the majority of the claimant's examiners have not noted

any [such] significant abnormalities in the claimant's behavior or social function."  Id.

As noted hereinabove, the court agrees that it was appropriate for the ALJ to rely on

mental status exams from treatment involving physical impairments because physicians

are qualified to perform mental status examinations and because, as the ALJ explained, if

Plaintiff were mentally limited to the extent opined by Dr. Mintz and Ms. Daudet, one

would expect it to be also evidenced in some of her many physical treatment visits.

Plaintiff argues it was error for the ALJ to discount medical opinions because

Plaintiff had only conservative treatment and to find "the record does not document

recurrent episodes or exacerbations requiring inpatient psychiatric treatment or acute

physician intervention that might provide support an [sic] extreme limitation in her ability

to complete a normal workday or workweek without interruption from psychologically based symptoms." Id. at 1876.  Plaintiff argues the ALJ's finding is error because she was admitted to the psychiatric unit at Shawnee Mission Medical Center, she had electroshock convulsive therapy, and her presentation at Dr. Mintz's examination was consistent with finding marked or extreme limitations.

The ALJ's bases for discounting Dr. Mintz's opinion have been thoroughly considered and discussed above and the court will not repeat them here.  The period at issue in this case is from Plaintiff's alleged onset of disability on June 30, 2016 through January 31, 2019.  (R. 1866, 1879).  As the Commissioner points out in her Brief, the record evidence reveals both the psychiatric hospitalization and electroshock convulsive therapy to which Plaintiff appeals occurred in 2013 when Plaintiff was working and well before she alleges she became disabled.  (R. 346-47).  The ALJ's understanding of these facts is revealed in his finding "the record does not document recurrent episodes or exacerbations requiring inpatient psychiatric treatment or acute physician intervention." Id. 1876.  The ALJ's reliance on conservative treatment is not error.

Plaintiff has shown no error in the ALJ's decision below.  Therefore, this case shall not be remanded and the court need not consider a remand for an immediate award of benefits as requested by Plaintiff.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

Dated August 4, 2023, at Kansas City, Kansas.


 s/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**